SO ORDERED.

Dated: June 16, 2014

Daniel P. Collins, Chief Bankruptcy Judge
_____

# U.S. BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARVIN D. BRODY,<br><br>    Debtor. | In Chapter 11 proceedings<br><br>Case No. 2:13-bk-01848-DPC<br><br>ORDER RE: MOTION FOR PAYMENT OF CLAIM NO. 4 |

Before the Court is Mission Pools of Escondido's ("Mission Pools") Motion for Payment of Claim No. 4 (the "Motion"). The Motion seeks an order from the Court directing the Debtor to make full payment on its mechanic's lien claim. The Debtor filed a partial objection to the Motion. The Court now partially grants the Motion.

**I.    Facts**

Mission Pools and the Debtor executed a contract for Mission Pools to construct a pool and related structures on the Debtor's property located at 1 Spinnaker Way, Coronado, California (the "Coronado Property") for $61,042.00 (the "Contract"). Section 4 of the Contract provides a schedule of installment payments in which: 30% of the purchase price would be due "upon completion of excavation and installation of steel reinforcement," 40% "upon completion of concrete pool shell," 25% "upon completion of tile and coping," and 5% "upon pool plastering." The Contract further provides that Mission Pools was not obligated to continue with further construction until each installment was timely paid. Moreover, "[i]n the event of any litigation between Mission

[Pools] and Buyer . . . the party prevailing in such dispute will be entitled to reasonable attorney's fees."

Mission Pools and the Debtor also entered into two "Change Orders" for additional work and improvements to the pool and property. The First Change Order was executed on May 1, 2012. It was paid in full by the Debtor. The Second Change Order was executed on May 23, 2012 and added an additional price of $5,935.00 to the Contract. The Second Change Order provided that "[a]ll additions are payable prior to plaster."

Mission Pools completed the additions contemplated in the Second Change Order but stopped work on the Coronado Property at the "gunite phase" (two phases prior to the final "plaster stage") because the Debtor failed to pay the installment invoice of $34,447.20 for the gunite phase. The Debtor also never paid the additional $5,935 under the Second Change Order. Mission Pools then filed a mechanic's lien foreclosure action in California state court as a consequence of the Debtor's non-payment under the Contract and Second Change Order.

The Debtor filed bankruptcy under chapter 11 on February 11, 2013. Mission Pools filed Claim No. 4 for $68,826.23 comprised of $34,447.20 for the gunite phase, $5,935 under the Second Change Order, $7,323.88 in interest, $4,403.38 in costs and $16,681 in attorneys' fees.[1] Mission Pools' Motion now seeks payment of $68,826.23 on its Claim No. 4.

**II.     Issues**

The Debtor's partial objection to the Motion creates two issues for the Court to decide: (1) whether Mission Pools is entitled to payment of the full amount of the Second Change Order ($5,935.00) and (2) whether Mission Pools' attorneys' fees totaling $16,681.00 are reasonable.

\ \ \ \

\ \ \ \

---

[1] Mission Pools' Claim No. 4 was amended two times to increase the original claim amount from $52,717.15 to $68,826.23 on account of post-petition interest and $6,917.05 of post-petition attorney's fees.

**III. Discussion**

    a. Second Change Order

It is undisputed that Mission Pools completed the work contemplated under the Second Change Order and the Debtor did not pay the $5,935 called for under the Second Change Order. It is also undisputed that Mission Pools stopped work at the gunite phase because the Debtor failed to make progress payments under the Contract.

The Debtor argues that the payment under the Second Change Order never came due. The Debtor maintains that Mission Pools was not entitled to payment under the Second Change Order until Mission Pools completed the "plaster phase" of the Contract. Accordingly, because Mission Pools stopped work at the "gunite phase" (two phases before plaster) payment under the Second Change Order never came due.

The Court disagrees with the Debtor's contention that payment on the Second Change Order is not due until Mission Pools completes the plaster phase. The Second Change Order states that "all additions are payable prior to plaster." The Court does not interpret this language to mean that payment under the Second Change Order is due *after* plaster. Rather, the Court finds that if the additions contemplated under the Second Change Order are completed payment is due but, in any event, must be paid *prior* to the plaster phase.

It was the Debtor's failure to make installment payments under the Contract that caused Mission Pools to stop work at the gunite phase. It would be inequitable to now turn a blind eye to the Debtor's default on the Contract by excusing his payment on the Second Change Order because Mission Pools properly refused to continue working until it reached completion of the plaster phase.

The Court finds that, where Mission Pools fully performed the additions in the Second Change Order, the Debtor must pay the Second Change Order price of $5,935 where that Change Order called for payment prior to the plaster phase commenced.

\ \ \ \

\ \ \ \

b. <u>Attorneys' Fees</u>

It is undisputed that Mission Pools is an over secured creditor entitled to its attorneys' fees. *See* 11 U.S.C. § 506(c) (2014); *In re Circle K Corp.*, 165 B.R. 649, 652 (Bankr. D. Ariz. 1994). The Debtor, however, contends that Mission Pools is not entitled to all of its attorneys' fees totaling $16,681 because the amount of attorneys' fees are unreasonable under § 506(b).

In determining whether attorney's fees are reasonable, the court in *In re Desert Springs Equestrian Center, LLC*, considered factors such as:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

2012 WL 2952181, at *2-3 (Bankr. D. Ariz. 2012) (Marlar, J.).

Mission Pools' attorneys' fees are roughly 33% of Mission Pools' Claim No. 4. $7,425.50 relates to the pre-petition pursuit of a mechanic's lien foreclosure action, from demand to complaint to default. The remaining $9,255.50 relates to post-petition amounts accrued in the 16 months since the Debtor filed bankruptcy.

Mission Pools relies on a declaration provided by its counsel, Michael Friedrichs, to support the claim that its attorneys' fees are reasonable. Mr. Friedrichs represented Mission Pools in pre-petition litigation to recover on its mechanic's lien. Mr. Friedrichs' billing rate was $295 per hour for services rendered prior to July 1, 2013 and $305 per hour for services rendered after July 1, 2013. Mr. Friedrichs' fees include services in preparing a demand letter, filing a state court complaint, serving copies of the complaint

1 on defendants, filing answers to cross-complaints, and issuing requests for entry of
2 default. Mr. Friedrichs also drafted a proof of claim, monitored the bankruptcy action,
3 responded to inquiries from the Debtor's counsel, amended the proof of claim and sought
4 a settlement with the Debtor.

In February 2014, Nicholas Hoskins was hired to represent Mission Pools in connection with the Debtor's bankruptcy. Mr. Friedrichs worked with Mr. Hoskins to get him up to speed and address inquiries from the Debtor's counsel. Of the total amount of attorneys' fees sought, Mr. Hoskins charged $1,155 in fees for his services performed.

The Debtor contends that Mission Pools' attorneys' fees are excessive for the routine practice of obtaining payment on a proof of claim in bankruptcy. The Debtor further argues that the issues are not novel as Mission Pools' claim is simply for a breach of contract.

The Debtor notes that other courts have determined that attorneys' fees comprising 30% of the claim are excessive. *E.g.*, *In re Montano*, 2007 WL 1837714, at \*6 (Bankr. D. Ariz. 2007) (Marlar, J.) ("The claim itself was for an oversecured debt, and the amount due was just under $25,000. The fee now claimed increases that sum by almost 30%. This is excessive, especially when one considers that there was no time-consuming contested litigation in this matter."). Because Mission Pools' attorneys' fees comprise 33% of its Claim No. 4, the Debtor reasons that Mission Pools' fees should be deemed excessive.

The Court has reviewed Mission Pools' attorneys' invoices and now determines that Mission Pools' attorneys' fees are excessive. The Court agrees with the Debtor that Mission Pools' claim is not unusually complex or novel. It is a simple breach of contract claim. Mission Pools seeks $9,255.50 in post-petition attorneys' fees primarily for monitoring the bankruptcy case and filing its proof of claim. Moreover, Mission Pools has not been involved in any post-petition contested litigation until it filed this Motion. Like the court in *Montano*, this Court finds that Mission Pools' fees totaling roughly 33% of its claim are excessive and should be reduced. The Court will reduce Mission Pools'

attorneys' fees by 33% to $11,176.27. This will, in turn, reduce Mission Pools' Claim No. 4 to $63,321.50.

### IV. Conclusion

The Court finds that the Second Change Order's price of $5,935 must be paid in full. The Court also finds that Mission Pools' attorneys' fees are excessive and must be reduced to $11,176.27. Accordingly,

**IT IS ORDERED** that the Debtor must pay $63,321.50 to satisfy Mission Pools' Claim No. 4.

**COPY** of the foregoing mailed by the BNC and/or sent by auto-generated mail to:

Interested parties